# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-60174

United States Court of Appeals
Fifth Circuit

**FILED**

September 10, 2019

Lyle W. Cayce
Clerk

MARIA SUYAPA GONZALES-VELIZ,

> Petitioner,

v.

WILLIAM P. BARR, U.S. ATTORNEY GENERAL,

> Respondent.

Petitions for Review of Orders
of the Board of Immigration Appeals

Before ELROD and WILLETT, Circuit Judges.[*]

JENNIFER WALKER ELROD, Circuit Judge:

Maria Suyapa Gonzales-Veliz, a Honduran citizen, petitions for review of the denial of asylum, withholding of removal, and protection under the Convention Against Torture (CAT). While her initial petition for review was pending before us, Gonzales-Veliz also filed a motion for reconsideration with the Board of Immigration Appeals (BIA), which subsequently denied reconsideration by invoking an intervening decision in *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018). Gonzales-Veliz also petitions for review of the denial of reconsideration. We deny both petitions for review.

---

[*] This matter is being decided by a quorum. 28 U.S.C. § 46(d).

No. 18-60174

I.

Gonzales-Veliz is a native and citizen of Honduras. In August 2014, Gonzales-Veliz entered the United States without inspection, was apprehended at the United States border, and was removed to Honduras under an expedited removal order. In a sworn statement, Gonzales-Veliz stated that she entered the United States "to look for employment" and that she had no fear of harm or returning to Honduras. Later in April 2015, Gonzales-Veliz once again entered the United States illegally and was apprehended. The Department of Homeland Security reinstated the 2014 removal order and sought to remove her, but this time, Gonzales-Veliz claimed that she feared returning to Honduras due to widespread gang violence there. An asylum officer referred the matter to an immigration judge (IJ).

After hearing testimony, the IJ denied Gonzales-Veliz's application for asylum, withholding of removal, and CAT protection. Citing controlling Fifth Circuit cases, the IJ held that Gonzales-Veliz was ineligible to apply for asylum because she unlawfully reentered the United States and had her previous removal order reinstated. *See Ramirez-Mejia v. Lynch*, 794 F.3d 485, 491 (5th Cir. 2015) ("[A]liens whose removal orders are reinstated may not apply for asylum."). The IJ further concluded that Gonzales-Veliz failed to demonstrate that she was harmed on account of a membership in a particular social group— Honduran women unable to leave their relationship. The IJ also determined that Gonzales-Veliz failed to demonstrate that the Honduran government was unable or unwilling to protect her because her testimony showed that the police took actions to protect her. Moreover, the IJ found her not credible. As to her application for CAT protection, the IJ found that the Honduran government would not acquiesce in torture that she was allegedly expecting at the hands of another individual with whom she had previously been in a relationship.

No. 18-60174

Alternatively, the IJ denied Gonzales-Veliz CAT relief because she lacked credibility.

Gonzales-Veliz appealed to the BIA, which dismissed the appeal. The BIA found that, even if Gonzales-Veliz was credible, she did not belong to her proffered particular social group because her own testimony showed that she was able to leave her relationship. The BIA further found that Gonzales-Veliz was not harmed on account of belonging to that group. The BIA denied Gonzales-Veliz's asylum and withholding of removal claims based on these grounds, and it did not rely on other grounds offered by the IJ in denying relief, such as the reentry bar for asylum and Gonzales-Veliz's lack of credibility. As to the IJ's denial of CAT relief, the BIA found insufficient evidence to disturb the IJ's finding that the Honduran government would not acquiesce in torture. Gonzales-Veliz petitioned for review of the BIA's denial of asylum, withholding of removal, and CAT protection.

After filing her initial petition for review, Gonzales-Veliz also filed a motion for reconsideration before the BIA. *See Espinal v. Holder*, 636 F.3d 703, 705 (5th Cir. 2011) ("In addition to filing a petition for review in this court, an alien may simultaneously seek reconsideration by the BIA."). While Gonzales-Veliz's motion for reconsideration was still pending, then-Attorney General Sessions issued his decision in *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), holding that "married women in Guatemala who are unable to leave their relationship" did not constitute a particular social group and clarifying other points of law pertaining to asylum and withholding of removal claims. The BIA denied Gonzales-Veliz's motion for reconsideration by invoking the Attorney General's *A-B-* decision. Gonzales-Veliz filed a second petition for review, challenging the denial of reconsideration.

3

No. 18-60174

II.

We first turn to Gonzales-Veliz's initial petition for review concerning the denial of asylum, withholding of removal, and CAT relief. We review factual findings for substantial evidence and "may not reverse the BIA's factual findings unless the evidence compels it." *Wang v. Holder*, 569 F.3d 531, 536–37 (5th Cir. 2009); 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). We hold that substantial evidence supports the BIA's denial of asylum, withholding of removal, and CAT relief.

A.

To qualify for asylum, an alien must show "that he is 'unable or unwilling to return to . . . [and] avail himself . . . of the protection of [his home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Ghotra v. Whitaker*, 912 F.3d 284, 288 (5th Cir. 2019) (alterations in original) (quoting 8 U.S.C. § 1101(a)(42)(A)). To qualify for withholding of removal, the alien must make the same showing but must establish that persecution is "more likely than not," which is "a higher bar than the 'well-founded fear' standard for asylum." *Id.* (quoting *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002)). "If an applicant does not carry his burden for asylum, he will not qualify for withholding of removal." *Id.*

For both asylum and withholding-of-removal claims, the alleged persecutor's motive—whether the persecutor acted against the alien *on account of* her membership in a particular social group—is crucial. Thus, an alien must show that a protected ground (*e.g.*, membership in a particular social group) was "at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). "[A]lthough a statutorily protected ground need not be the only reason for harm, it cannot be 'incidental, tangential, superficial, or

No. 18-60174

subordinate to another reason for harm.'" *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009) (quoting *Matter of J-B-N & S-M-*, 24 I. & N. Dec. 208, 214 (BIA 2007)).

Here, the BIA found that Gonzales-Veliz failed to show that she was harmed on account of her membership in a particular social group—*i.e.*, that her ex-boyfriend harmed her for being a Honduran woman unable to leave her relationship. Substantial evidence supports this finding. Gonzales-Veliz's own testimony belies her claim. Gonzales-Veliz testified before the IJ that she and her ex-boyfriend had no problem after she left him and that "problems began" only after she sued her ex-boyfriend for child support. Gonzales-Veliz argues that the *machismo* culture and her ex-boyfriend's desire to sexually dominate her were additional reasons that her ex-boyfriend harmed her.[1] However, the BIA found that her ex-boyfriend was "motivated only by retribution after she sued him," and the record does not compel a contrary conclusion. *See Wang*, 569 F.3d at 536–37.

## B.

"To obtain protection under the CAT, an alien must demonstrate that, if removed to a country, it is more likely than not [she] would be tortured by, or with the acquiescence of, government officials acting under the color of law." *Hakim v. Holder*, 628 F.3d 151, 155 (5th Cir. 2010). Acquiescence by the government includes "willful blindness of torturous activity." *Id.*

Gonzales-Veliz argues that the BIA failed to provide a reasoned explanation in denying her CAT relief. Because the *Chenery* doctrine restricts a reviewing court to evaluate the propriety of an agency's decision on the grounds invoked by the agency, "that basis must be set forth with such clarity

---

[1] *See Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 383 (5th Cir. 2016) ("[A]n additional central reason for [the persecutor's] actions is persecution on account of a protected category.").

as to be understandable." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). "It will not do for a court to be compelled to guess at the theory underlying the agency's action." *Id.* at 196–97. The central question under *Chenery* is whether the BIA's decision "deprive[s] [us] of a reasoned basis for review." *Soadjede v. Ashcroft*, 324 F.3d 830, 832 (5th Cir. 2003). The BIA does not implicate *Chenery* if it adopts the IJ's opinion such that "the [IJ's] opinion provides the basis for review." *Id.* Here, the BIA observed that "there [was] insufficient reason to disturb the denial of the applicant's request for protection under the [CAT], on the basis of the [IJ's] conclusion that she did not meet her burden . . . ." The BIA's statement can fairly be read as incorporating the IJ's opinion. The IJ denied CAT relief because Gonzales-Veliz failed to show that the Honduran government would consent to or acquiesce in her torture and because she lacked credibility.

Substantial evidence supports the IJ's finding that the Honduran police did not and would not acquiesce to Gonzales-Veliz's alleged torture by her ex-boyfriend. Gonzales-Veliz testified that when her ex-boyfriend came to her house to threaten her, the police came and stopped the harassment. Against this record evidence, Gonzales-Veliz simply speculates that her ex-boyfriend called someone higher-up in the police ranks who ordered the police officer to return the gun to her ex-boyfriend and let him go and that her ex-boyfriend later murdered that police officer. However, speculation alone is insufficient to compel a conclusion that is contrary to the IJ's finding. *See Milat v. Holder*, 755 F.3d 354, 363–64 (5th Cir. 2014) (rejecting an alien's speculation as the basis for reversing a BIA's finding under the substantial evidence standard). Furthermore, although Gonzales-Veliz testified that the police also told her that they could not help her as they lacked the personnel, to the extent that this statement is to be believed, it points to a lack of resources and funding, not consent or acquiescence, on the part of the police force. *Tamara-Gomez v.*

No. 18-60174

*Gonzales*, 447 F.3d 343, 351 (5th Cir. 2006) (holding that "the [alien's home government's] lack of financial resources to eradicate the threat or risk of torture" is insufficient to warrant CAT relief).

\* \* \*

Because substantial evidence supports the denial of asylum, withholding of removal, and CAT relief, we deny Gonzales-Veliz's first petition for review.

III.

We now turn to Gonzales-Veliz's second petition for review concerning the BIA's denial of her motion for reconsideration. As discussed above, Gonzales-Veliz filed her motion for reconsideration with the BIA while her first petition for review was pending before us. On June 11, 2018, while Gonzales-Veliz's motion for reconsideration was still pending before the BIA, Attorney General Sessions issued *Matter of A-B-*, overruling the BIA's precedential decision in *Matter of A-R-C-G-*, which Gonzales-Veliz cited in crafting her asylum and withholding of removal claims. *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), *vacated in part*, *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018), *appeal filed sub nom. Grace v. Barr*, No. 19-5013 (D.C. Cir. filed Jan. 30, 2019). On June 29, 2019, the BIA denied reconsideration, holding that Gonzales-Veliz "has not demonstrated that reconsideration is warranted." In particular, the BIA invoked *A-B-* in denying reconsideration of its previous denial of asylum and withholding of removal.[2]

---

[2] The BIA alternatively denied reconsideration of the asylum claim because Gonzales-Veliz unlawfully reentered the United States and had her previous removal order reinstated and was thus ineligible to apply for asylum. *See Ramirez-Mejia*, 794 F.3d at 491 ("[A]liens whose removal orders are reinstated may not apply for asylum."). We alternatively affirm the denial of reconsideration as to the asylum claim on this ground. *See Pierre-Paul v. Barr*, No. 18-60275, 2019 WL 3229150, at \*3 n.2 (5th Cir. July 18, 2019) ("In this circuit, alternative holdings are binding and not *obiter dictum*.").

No. 18-60174

We review the BIA's denial of a motion for reconsideration under a highly deferential abuse-of-discretion standard. *Lowe v. Sessions*, 872 F.3d 713, 715 (5th Cir. 2017). To succeed on a motion for reconsideration, the petitioner must "identify a change in the law, a misapplication of the law, or an aspect of the case that the BIA overlooked." *Zhao v. Gonzales*, 404 F.3d 295, 301 (5th Cir. 2005). Gonzales-Veliz puts forth a comprehensive challenge against the BIA's decision not to reconsider its denial of asylum and withholding of removal. First, she argues that the BIA misinterpreted *A-B-*. Second, assuming *arguendo* that the BIA correctly interpreted *A-B-*, she contends that the *A-B-* decision was arbitrary and capricious. Third and alternatively, she asks us to remand her matter to the immigration judge so that she can have a fresh start under the *A-B-* standard. The government responds that we lack jurisdiction to entertain Gonzales-Veliz's arguments relating to *A-B-* because Gonzales-Veliz failed to exhaust all available administrative remedies.

Adding to the complexity of the *A-B-* issue, while Gonzales-Veliz's second petition for review was pending before us, the District Court for the District of Columbia enjoined and vacated in part the *A-B-* decision. *Grace*, 344 F. Supp. 3d at 146. The government in that case appealed the decision, and the appeal is currently pending before the D.C. Circuit. However, because the district court denied the stay of the injunction, the injunction still stands. *Grace v. Whitaker*, No. 18-1853, 2019 WL 329572 (D.D.C. Jan. 25, 2019).

We hold that: (1) we have jurisdiction to entertain Gonzales-Veliz's arguments concerning *A-B-*; (2) the *Grace* injunction does not affect our ability to review *A-B-*, nor could it, as it does not bind courts in this circuit; (3) the BIA correctly interpreted *A-B-*; (4) *A-B-* was not arbitrary and capricious; and (5) remand to the immigration judge is not warranted. We address each issue in turn.

No. 18-60174

A.

We first turn to the government's argument that we lack jurisdiction to entertain Gonzales-Veliz's arguments concerning *A-B-*. "[F]ailure to exhaust an issue deprives this court of jurisdiction over that issue." *Omari v. Holder*, 562 F.3d 314, 319 (5th Cir. 2009). "Petitioners fail to exhaust their administrative remedies as to an issue if they do not first raise the issue before the BIA . . . ." *Id.* at 318. "This exhaustion requirement applies to all issues for which an administrative remedy is available to a petitioner 'as of right.'" *Id.* A remedy is available as of right if: (1) the petitioner could have raised the issue before the BIA; and (2) the BIA has adequate mechanisms to address and remedy such a claim. *Id.* at 318–19.

The government argues that Gonzales-Veliz failed to exhaust all available administrative remedies. Because the Attorney General issued the *A-B-* decision after Gonzales-Veliz filed her motion for reconsideration, Gonzales-Veliz could not present her arguments concerning *A-B-* to the BIA in her motion. However, the government asserts that Gonzales-Veliz could have presented her arguments by requesting the BIA to *sua sponte* reconsider its denial of reconsideration.

We reject the government's argument. As Gonzales-Veliz points out, the regulations state that "[a] party may file only one motion to reconsider any given decision and may not seek reconsideration of a decision denying a previous motion to reconsider." 8 C.F.R. § 1003.2(b)(2). The regulatory text does not carry an exception for situations when the BIA's denial of a motion for reconsideration creates a new issue. Therefore, Gonzales-Veliz was barred from requesting the BIA to reconsider its denial of reconsideration. Furthermore, although the regulations allow the BIA to reconsider any matter "on its own motion," this *sua sponte* mechanism is available to the BIA, not to

9

No. 18-60174

aliens as of right.  8 C.F.R. § 1003.2(a).[3]  Because Gonzales-Veliz exhausted all administrative remedies that were available to her, we have jurisdiction to consider her *A-B-* arguments.  *See Omari*, 562 F.3d at 318.

B.

We hold that the *Grace* injunction does not affect our ability to review or rely on *A-B-* in deciding this case.   Under 8 U.S.C. § 1103(a)(1), the "determination and ruling by the Attorney General with respect to all questions of law" controls how the Department of Homeland Security carries out its duties.  After the Attorney General issued his *A-B-* decision, the United States Citizenship and Immigration Service (USCIS) issued a memorandum providing USCIS officers guidance on processing credible-fear claims in accordance with *A-B-*.  *Grace*, 344 F. Supp. 3d at 109.  The *Grace* plaintiffs, who were given a negative credible-fear determination under *A-B-* and facing removal, sought an injunction against the government from enforcing *A-B-* and the guidance memorandum.  *Id.* at 112.  The *Grace* court agreed with the plaintiffs that both *A-B-* and the guidance memorandum were arbitrary and capricious; enjoined the government from applying the new credible-fear policies against the plaintiffs; and vacated *A-B-* and the guidance memorandum in part.  *Id.* at 141, 146.  By its own terms, the *Grace* injunction expressly limited its applicability to the plaintiffs in that case.  *See Grace* Injunction Order at 3, *Grace v. Whitaker*, No. 18-1853 (D.D.C. Dec. 19, 2018), ECF No. 105 (enjoining the government "from removing any plaintiffs without providing each of them a new credible fear process").  However, the *Grace* court later denied the government's motion for a stay pending appeal "to enable the

---

[3] Indeed, the government's argument contradicts itself.  If the BIA does something because an alien requests it to do it, then the BIA's action cannot be characterized as *sua sponte*.  *See Sua sponte*, *Black's Law Dictionary* (11th ed. 2019) ("Without prompting or suggestion; on its own motion.").

[challenged] policies to continue to apply in all expedited removal cases, except the plaintiffs." *Grace*, 2019 WL 329572, at *1.

The *Grace* court's order does not prevent us from reviewing *A-B-* in order to rule on Gonzales-Veliz's petition for review. As discussed, the *Grace* injunction is limited to the plaintiffs in that case and does not extend to Gonzales-Veliz. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2427–28 (2018) (Thomas, J., concurring) (observing that the traditional function of equitable relief is to vindicate the rights of the parties in the suit); *cf. Texas v. United States*, 809 F.3d 134, 187–88 (5th Cir. 2015) (crafting the injunctive relief to fully vindicate the rights of the plaintiff-states in the case); *see also* Fed. R. Civ. P. 65(d)(2) (listing those who can be bound by an injunction). But even if it were not, the *vacatur* from the *Grace* decision is limited: the court vacated *A-B-* and the guidance memorandum as they pertain to credible-fear claims in expedited removal proceedings only. *Grace* Injunction Order at 3. Here, *A-B-* governs Gonzales-Veliz's asylum and withholding of removal claims.

Most importantly, we have an independent duty "to say what the law is" in this case. *Marbury v. Madison*, 5 U.S. 137, 177 (1803). "Those who apply the rule to particular cases[] must of necessity expound and interpret that rule." *Id.* We have an independent duty to decide whether the Attorney General's *A-B-* decision accords with existing immigration law and properly governs Gonzales-Veliz's petition for review. *See id.* ("If two laws conflict with each other, the courts must decide on the operation of each."). We cannot be hindered from performing our duty by an injunction in another jurisdiction that is currently being appealed and is predicated on a view of immigration law with which we disagree, as we explain below.

C.

We now turn to Gonzales-Veliz's argument that the BIA misinterpreted *A-B-*. More specifically, according to Gonzales-Veliz, the BIA misinterpreted

No. 18-60174

*A-B-* as (1) creating a categorical ban against recognizing groups based on domestic violence as a particular social group; (2) altering the standard for showing the government's inability or unwillingness to control a private actor inflicting harm; and (3) changing the standard for demonstrating the nexus between persecution and membership in a particular social group.

1.

We begin by examining the relevant immigration law. Asylum and withholding of removal claims, in part, turn on: (1) whether a group constitutes a cognizable particular social group; (2) whether there is a nexus between the harm and membership in the particular social group; and (3) whether the government is unable or unwilling to protect the alien. *Ghotra*, 912 F.3d at 288; *Efe*, 293 F.3d at 906.

Through its precedential decisions, the BIA clarified the requirements for a "particular social group." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 234–49 (BIA 2014); *Matter of W-G-R-*, 26 I. & N. Dec. 208, 224 (BIA 2014); *see also Hernandez-De La Cruz v. Lynch*, 819 F.3d 784, 787 n.1 (5th Cir. 2016) (noting that the BIA "adher[ed] to its prior interpretations" in clarifying the requirements for a "particular social group"). Under *M-E-V-G-*, a particular social group must: (1) consist of persons who share a common immutable characteristic; (2) be defined with particularity; and (3) be socially visible or distinct within the society in question. *M-E-V-G-*, 26 I. & N. Dec. at 237. The BIA also emphasized another principle "well established in [its] prior precedents and . . . already a part of the social group analysis": "[T]he social group must exist independently of the fact of persecution." *Id.* at 236 n.11.

In clarifying the nexus requirement, the BIA explained that "[t]he [alien] bears the burden of showing that his membership in a particular social group was or will be a central reason for his persecution." *W-G-R-*, 26 I. & N. Dec. at 224. Moreover, the BIA emphasized again that the alien must establish that

his harm was inflicted by the government or private actors that the government was unable or unwilling to control. *Id.* at 224 n.8 (citing *Matter of Acosta*, 19 I. & N. Dec. 211, 222 (BIA 1985)).

Shortly after deciding *M-E-V-G-* and *W-G-R-*, the BIA issued another precedential decision in *Matter of A-R-C-G-*, 26 I. & N. Dec. 388 (BIA 2014), *overruled by A-B-*, 27 I. & N. Dec. at 346. Purporting to apply the *M-E-V-G-* requirements, the BIA held that A-R-C-G-'s proposed group—married women in Guatemala who are unable to leave their relationship—was a cognizable particular social group. 26 I. & N. Dec. at 391–94.

However, that decision was based on the government's concession that A-R-C-G- "suffered past harm rising to the level of persecution and that the persecution was on account of a particular social group comprised of 'married women in Guatemala who are unable to leave their relationship'"—thereby short-circuiting the analysis on the particular social group, nexus, and level of persecution. *Id.* at 390. The only issues that the government contested in that case were whether the Guatemalan government was unwilling or unable to control A-R-C-G-'s husband and whether relocation was reasonable, which the BIA remanded to the immigration judge to resolve. *Id.* at 395.

2.

Against this backdrop, the Attorney General issued *A-B-*. *See* 8 C.F.R. § 1003.1(h)(1)(i) ("The [BIA] shall refer to the Attorney General for review of its decision all cases that . . . [t]he Attorney General directs the [BIA] to refer to him."); *id.* § 1003.1(g) ("[D]ecisions of the [BIA], and decisions of the Attorney General, shall be binding on all officers[,] employees . . . or immigration judges . . . ."). A-B- applied for asylum and withholding of removal, claiming that "El Salvadoran women who are unable to leave their domestic relationships where they have children in common [with their partners]" constituted a particular social group. *A-B-*, 27 I. & N. Dec. at 321. The immigration judge initially

denied these claims, holding that (1) A-B- was not credible; (2) A-B-'s group did not constitute a particular social group; (3) even if it did, A-B- failed to show that her membership in the group was a central reason for the persecution; and (4) A-B- failed to show that the El Salvadoran government was unable or unwilling to protect her. *Id.*

The BIA reversed the immigration judge on all four grounds and remanded. *Id.* Specifically, the BIA held that the immigration judge erred because A-B-'s group was substantially similar to "married women in Guatemala who are unable to leave their relationship," which the BIA had accepted in *A-R-C-G-*. *Id.* On remand, however, the immigration judge, "certif[ied] and administratively return[ed] the matter to the [BIA] in light of intervening developments in the law," implying that the BIA's analysis rested on weak legal support. *Id.* at 321–22. The immigration judge cited cases from the First, Fourth, Sixth, and Eight Circuits that rejected asylum claims involving similar groups based on domestic violence.[4] *Id.* at 322. Subsequently, the Attorney General directed the BIA to refer the matter to him for his review. *Id.* at 323.

In *A-B-*, the Attorney General held that "*A-R-C-G-* was wrongly decided and should not have been issued as a precedential decision." *Id.* at 333. The Attorney General evaluated *A-R-C-G-*'s analysis on particular social group, government's inability to protect, and nexus between harm and membership in a particular social group under established BIA precedents. Turning first to the particular social group issue, the Attorney General determined that "[h]ad the [BIA] properly analyzed the [particular social group] issues, then it

---

[4] *Velasquez v. Sessions*, 866 F.3d 188, 197 (4th Cir. 2017); *Fuentes-Erazo v. Sessions*, 848 F.3d 847, 853 (8th Cir. 2017); *Cardona v. Sessions*, 848 F.3d 519, 523 (1st Cir. 2017); *Marikasi v. Lynch*, 840 F.3d 281, 291 (6th Cir. 2016).

would have been clear that [A-R-C-G-'s group] was not cognizable." *Id.* at 334. The Attorney General observed that the BIA's analysis of particular social group in *A-R-C-G-* was largely based on the government's concessions, "lacked rigor[,] and broke with the [BIA's] own precedents." *Id.* at 333.

Reaffirming *M-E-V-G-*'s requirement that "a particular social group *must* 'exist independently' of the harm asserted," the Attorney General explained that defining a group by its members' persecution would "moot[] the need to establish actual persecution." *Id.* at 334–35 (quoting *M-E-V-G-*, 26 I. & N. Dec. at 236 n.11). The Attorney General held that *A-R-C-G-* failed to see that "'married women in Guatemala who are unable to leave their relationship' was effectively defined to consist of women in Guatemala who are victims of domestic abuse because the inability 'to leave' was created by harm or threatened harm." *Id.* at 335.

The Attorney General further explained that, under *M-E-V-G-*, to be "particular," a social group must not be "amorphous, overbroad, diffuse, or subjective," and that "[s]ocial groups defined by their vulnerability to private criminal activity likely lack the particularity required under *M-E-V-G-*, given that broad swaths of society may be susceptible to victimization." *Id.* (quoting *M-E-V-G-*, 26 I. & N. Dec. at 239). *A-R-C-G-*, however, did not provide how "married women in Guatemala who are unable to leave their relationship" provided the "clear benchmark" for determining who would belong to the group. *Id.* The Attorney General also explained that, to be socially distinct, a group must be "recognizable by society at large." *Id.* at 336 (citing *W-G-R-*, 26 I. & N. Dec. at 217). However, *A-R-C-G-* failed to explain how the reports of Guatemala's *machismo* culture "established that Guatemalan society perceives, considers, or recognizes 'married women in Guatemala who are unable to leave their relationship' to be a distinct social group." *Id.*

15

Turning next to the issue of whether the Guatemalan government "was unable or unwilling to control" A-R-C-G-'s ex-husband, the Attorney General noted that the BIA in *A-R-C-G-* declined to resolve the issue and remanded to the immigration judge. *Id.* at 337. Nevertheless, the Attorney General explained that "[a]n applicant seeking to establish persecution based on violent conduct of a private actor 'must show more than difficulty . . . controlling' private behavior." *Id.* (quoting *Menjivar v. Gonzales*, 416 F.3d 918, 921 (8th Cir. 2005)). "The applicant must show that the government condoned the private actions 'or at least demonstrated a complete helplessness to protect the victims.'" *Id.* (quoting *Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000)).

Finally, turning to the nexus issue, the Attorney General reaffirmed that "[e]stablishing the required nexus between past persecution and membership in a particular social group is a critical step for victims of private crime who seek asylum." *Id.* at 338 (citing *In re R-A-*, 22 I. & N. Dec. 906, 920–23 (BIA 2001)). The focus of the nexus analysis "is on 'the persecutors' motives'—why the persecutors sought to inflict harm." *Id.* (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992)). A victim's membership in a particular social group must be a central reason for the harm; however, "[r]easons incidental, tangential, or subordinate to the persecutor's motivation will not suffice." *Id.* (citing *J-B-N- & S-M-*, 24 I. & N. Dec. at 214). The Attorney General further reasoned that "[w]hen private actors inflict violence based on a personal relationship with a victim, then the victim's membership in a larger group may well not be 'one central reason' for the abuse." *Id.* at 338–39. The Attorney General then held that *A-R-C-G-* was erroneous because it "cited no evidence that [A-R-C-G-'s] ex-husband attacked her because he was aware of, and hostile to, 'married women in Guatemala who are unable to leave their relationship.' Rather, he attacked her because of his preexisting personal relationship with [her]." *Id.* at 339.

No. 18-60174

Having overruled *A-R-C-G-*, the Attorney General also vacated the BIA's decision in *A-B-* and remanded for further proceedings. *Id.* at 340. Citing *M-E-V-G-* and *W-G-R-*, the Attorney General reiterated that "[n]either immigration judges nor the [BIA] may avoid the rigorous analysis required in determining asylum claims, especially where victims of private violence claim persecution based on membership in a particular social group." *Id.*

3.

We now address Gonzales-Veliz's argument that the BIA misinterpreted the Attorney General's *A-B-* decision as: (1) creating a categorical ban against recognizing groups based on domestic violence as particular social groups; (2) altering the standard for showing the government's inability or unwillingness to protect the victim; and (3) changing the standard for showing the nexus between persecution and membership in a particular social group. We hold that the BIA correctly interpreted *A-B-* in denying her motion for reconsideration.

a.

As to the particular social group issue, the BIA stated that "[t]he Attorney General held that [the groups], like the one articulated by [Gonzales-Veliz], lack the requisite particularity and social distinction and thus are not cognizable." Gonzales-Veliz argues that this statement shows the BIA's misunderstanding of *A-B-* as creating a categorical ban on groups based on domestic violence. She points us to the Attorney General's statement that "groups defined by their vulnerability to private criminal activity *likely* lack the particularity." *A-B-*, 27 I. & N. Dec. at 335 (emphasis added). Because the Attorney General said that "there may be exceptional circumstances when victims of private criminal activity could meet these requirements," Gonzales-Veliz argues that *A-B-* cannot be read as creating a categorical ban on groups based on criminal activity. *Id.* at 317.

17

No. 18-60174

Although we agree with Gonzales-Veliz that the Attorney General did not create a categorical ban against groups based on domestic violence, she still cannot prevail.  Contrary to her characterizations, the BIA did not construe *A-B-* as creating a categorical ban on groups based on domestic violence: the BIA never even stated that groups based on domestic violence are categorically banned.  Instead, the BIA reasonably relied on the Attorney General's reasoning regarding the groups in *A-R-C-G-* and *A-B-* because Gonzales-Veliz's group—Honduran women unable to leave their relationship—is substantially similar to those groups.  *See A-B-*, 27 I. & N. Dec. at 321 (El Savadoran women who are unable to leave their domestic relationships where they have children in common with their partners); *A-R-C-G-*, 26 I. &. N. Dec. at 389 (married women in Guatemala who are unable to leave their relationship).  As an adjudicatory body, the BIA necessarily relies on established precedents to decide matters pending before it and to avoid re-inventing the wheel every time.  *See* 8 C.F.R. § 1003.1(g) (BIA's decisions "may be designated to serve as precedents in all proceedings involving the same issue or issues.").  Here, *A-B-*'s substantive reasoning happened to squarely foreclose Gonzales-Veliz's group, and the BIA did not blindly apply *A-B-* as a categorical ban against groups based on domestic violence.

Indeed, as the BIA observed, under *A-B-*'s analysis, Gonzales-Veliz's group cannot constitute a particular social group.  As in *A-R-C-G-* and *A-B-*, "Honduran women unable to leave their relationship" is impermissibly defined in a circular manner.  The group is defined by, and does not exist independently of, the harm—*i.e.*, the inability to leave.  *A-B-*, 27 I. & N. Dec. at 334–35; *M-E-V-G-*, 26 I. & N. Dec. at 236 n.11.  Gonzales-Veliz's group also lacks particularity because "broad swaths of society may be susceptible to victimization." *A-B-*, 27 I. &. N. Dec. at 335; *cf. Orellana-Monson v. Holder*, 685 F.3d 511, 521 (5th Cir. 2012) (rejecting "men who . . . refused to join [a

gang]" because that group was "exceedingly broad" and "encompass[ed] a diverse cross section of society"); *Santos Mejia v. Sessions*, 717 F. App'x 257, 261 (4th Cir. 2018) ("[A] group consisting of 'Honduran women evading rape and extortion' would surely include every woman in Honduras.").

Gonzales-Veliz has similarly failed to explain how Honduran society views women unable to leave their relationship as a socially distinct group. Gonzales-Veliz cites to several reports of a widespread *machismo* culture. However, those reports provide no guidance or aid in discerning whether or how Honduran culture "perceives, considers, or recognizes" women who are unable to leave their relationship "to be a distinct social group." *A-B-*, 27 I. & N. Dec. at 336. For these reasons, we agree with the BIA that Gonzales-Veliz's group is not a particular social group under *A-B-*.

b.

Gonzales-Veliz also argues that the BIA misinterpreted *A-B-* as heightening the standards for showing the government's inability and unwillingness to control a private actor and for demonstrating a nexus between persecution and membership in a particular social group.

We disagree. There is no indication that the BIA misinterpreted *A-B-* because it almost verbatim restated the standards that *A-B-* articulated. First, the BIA stated that "an applicant whose asylum claim is based on private actors must show that the government either condoned the private actions 'or at least demonstrated a complete helplessness to protect the victims.'" Second, the BIA stated that "to establish a nexus to a protected ground, an applicant must show that the persecutor was motivated by membership in the proposed

No. 18-60174

[particular social group] and not by a pre-existing personal relationship." Thus we reject Gonzales-Veliz's argument that the BIA misinterpreted *A-B-*.[5]

D.

Gonzales-Veliz alternatively argues that, if the BIA correctly interpreted *A-B-*, then *A-B-* constituted an arbitrary and capricious change in policy. Gonzales-Veliz argues that *A-B-* was arbitrary and capricious because the Attorney General failed to acknowledge or explain (1) a blanket preclusion of social groups involving women seeking to escape abusive domestic relationships; (2) raising the standard for the "unable or unwilling" standard to the "complete helplessness" standard; and (3) the statement that a private actor's violence based on a personal relationship with the victim may not suffice as a nexus between persecution and protected grounds.

We reject this argument for two reasons. First, *A-B-* did not constitute a change in policy. Second, assuming *arguendo* that *A-B-* can be read to constitute a change in policy, the Attorney General adequately acknowledged and explained the reasons for the change.

1.

*A-B-* did not constitute a change in policy. As we already discussed, the Attorney General's *A-B-* decision did not create a blanket preclusion for groups based on domestic violence. The Attorney General expressly stated that "there may be exceptional circumstances when victims of private criminal activity could meet these requirements." *A-B-*, 27 I. & N. Dec. at 317. "[The applicants] must satisfy established standards when seeking asylum." *Id.* The Attorney

---

[5] Recognizing that the BIA largely restated *A-B-*, Gonzales-Veliz further contends that the BIA failed to provide a reasoned analysis in applying *A-B-* to her case as to the government's inability and nexus elements. Even if we agree, she cannot prevail. Given that Gonzales-Veliz's group does not constitute a particular social group under *A-B-*, she would not be entitled to asylum and withholding of removal even if she prevails on other grounds.

General relied on the standards firmly established in BIA precedents to hold that A-R-C-G-'s and A-B-'s groups were not cognizable.

The Attorney General also did not raise the standard for the government's unwillingness or inability to protect to the "complete helplessness" standard. As Gonzales-Veliz acknowledges, in this circuit as well as others, the "inability or unwillingness" standard is interchangeable with the "complete helplessness" standard. *See Garcia-Garcia v. Mukasey*, 294 F. App'x 827, 829 (5th Cir. 2008); *Shehu v. Gonzales*, 443 F.3d 435, 437 (5th Cir. 2006); *see also Menjivar*, 416 F.3d at 921; *Galina*, 213 F.3d at 958. These two formulations accomplish the same purpose: to show that an alien's home government has "more than difficulty . . . controlling private behavior." *A-B-*, 27 I. & N. Dec. at 337 (quoting *Menjivar*, 416 F.3d at 921); *accord Matter of McMullen*, 17 I. & N. Dec. 542, 546 (BIA 1980).

Similarly, *A-B-* did not alter an applicant's burden to show the nexus between persecution and membership in a particular social group. The Attorney General restated the existing requirement that "[w]hen private actors inflict violence based on a personal relationship with a victim, then the victim's membership in a larger group may well not be 'one central reason' for the abuse." *A-B-*, 27 I. & N. Dec. at 338. This restatement is consistent with established BIA precedents as well as existing asylum law. *See R-A-*, 22 I. & N. Dec. at 920–23; *J-B-N- & S-M-*, 24 I. & N. Dec. at 214; *see also* 8 U.S.C. § 1158(b)(1)(B)(i) (requiring membership in a particular social group to be a central reason for persecution); *Thuri v. Ashcroft*, 380 F.3d 788, 792 (5th Cir. 2004) (upholding the denial of asylum when the applicant only demonstrated "purely personal" motives). We therefore reject Gonzales-Veliz's argument.

In sum, because *A-B-* did not change any policy relating to asylum and withholding of removal claims, we reject Gonzales-Veliz argument that *A-B-* constituted an arbitrary and capricious change in policy.

2.

Even assuming *arguendo* that *A-B-* can be read to constitute a change in policy, the Attorney General sufficiently explained the reasons for the change. An agency is not permanently bound to the first reasoned decision that it makes. "Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). When the agency changes its position, it "need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate." *Id.* at 2125 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). However, "the agency must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Id.* at 2126 (citation omitted). The agency "must also be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Id.* (citation omitted). "'[U]nexplained inconsistency' in agency policy is a 'reason for holding an interpretation to be an arbitrary and capricious change from agency practice.'" *Id.* (alteration in original) (quoting *Nat'l Cable Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)).

In the *A-B-* decision, the Attorney General sufficiently explained his reasons for overruling *A-R-C-G-*. The Supreme Court has held that "an agency may justify its policy choice by explaining why that policy 'is more consistent with statutory language' than alternative policies[.]" *Id.* at 2127 (quoting *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 175 (2007)). Echoing Judge Wilkinson's cogent concurring opinion in *Velasquez*, the Attorney General stated his concerns that "the [BIA]'s recent treatment of the term 'particular social group' is 'at risk of lacking rigor.'" *A-B-*, 27 I. & N. Dec. at 346 (quoting *Velasquez*, 866 F.3d at 198 (Wilkinson, J., concurring)). Judge Wilkinson wrote that the phrase "particular social group" "must be understood in the context of

the other statutory grounds for asylum protection." *Velasquez*, 866 F.3d at 198 (Wilkinson, J., concurring).   Indeed, the Attorney General mirrored this observation: "[n]othing in the text of the [Immigration and Nationality Act (INA)] supports the suggestion that Congress intended 'membership in a particular social group' to be 'some omnibus catch-all'" for solving every 'heart-rending situation.'" *A-B-*, 27 I. & N. Dec. at 346 (quoting *Velasquez*, 866 F.3d at 198 (Wilkinson, J., concurring)).

To the extent that the Attorney General overruled an erroneous BIA decision to be more faithful to the statutory text, there is no error.  *See Encino Motorcars*, 136 S. Ct. at 2127.  The Attorney General's interpretation of the INA in *A-B-* is not only "permissible under the statute," but is a much more faithful interpretation of the INA.  *Fox Television*, 556 U.S.at 515.  We agree that interpreting the phrase "particular social group" to include "[v]ictims of general extortion and domestic violence . . . that affects all segments of the population" would render the asylum statute unrecognizable.  *Velasquez*, 866 F.3d at 199 (Wilkinson, J., concurring) (internal quotation marks and citation omitted).  "Consistent with the interpretive canon '*ejusdem generis*,' the proper interpretation of the phrase can be only achieved when it is compared with the other enumerated grounds of persecution," such as race, religion, nationality, and political opinion.  *M-E-V-G-*, 26 I. & N. Dec. at 234.  The Attorney General's interpretation was, if anything, a return to the statutory text as Congress created it and as it had existed before the BIA's *A-R-C-G-* decision.

The Attorney General further found problematic the fact that *A-R-C-G-*, which was decided based on the government's concession on many important issues, conflicted with other established BIA precedents and created confusion for asylum applicants, asylum officers, immigration judges, and the BIA.  *A-B-*, 27 I. & N. Dec. at 319; *see also id.* at 334 ("By accepting [the government's] concessions as conclusive, the [BIA] in *A-R-C-G-* created a misleading

impression concerning the cognizability of similar social groups . . . .").
Removing the source of confusion for those who rely on BIA precedents is a
"good reason[] for the new policy." *Fox Television*, 556 U.S. at 515. Thus,
assuming *arguendo* that the *A-B-* decision constituted a change in policy, the
Attorney General adequately justified that change.

\* \* \*

For these reasons, we reject Gonzales-Veliz's contention that *A-B-* was
arbitrary and capricious.

E.

We now turn to Gonzales-Veliz's request that we should remand her
matter back to the immigration judge so that she may restart her application
process under the *A-B-* standard. We deny this request. The premise of
Gonzales-Veliz's argument is that *A-B-* changed her burden for the asylum and
withholding of removal claims. This is not true. As we discussed above, *A-B-*
did not alter the legal requirements; it simply restated established principles
and overruled *A-R-C-G-* because *A-R-C-G-* deviated from those principles. In
sum, there was no change in law or policy that would entitle Gonzales-Veliz to
a remand.

However, even assuming *arguendo* that *A-B-* altered the standards,
Gonzales-Veliz is still not entitled to a remand. Even if there were a change
in legal standard, *A-R-C-G-* constituted the easier burden for Gonzales-Veliz,
which she failed to satisfy. If she cannot prevail under *A-R-C-G-*, she also
cannot prevail under *A-B-*. Thus, remand would be futile in her case.
*Cf. Cantarero-Lagos v. Barr*, 924 F.3d 145, 153 (5th Cir. 2019) (holding that
"[e]ven if [the BIA] announced a new legal rule, which [was] dubious [in that
case]," petitioners failed to show justifiable reliance interest to avoid
retroactive application).

No. 18-60174

\* \* \*

For these reasons, we hold that the BIA did not abuse its discretion in denying reconsideration as to the asylum and withholding of removal claims.

IV.

Finally, we address Gonzales-Veliz's argument that the BIA should have reconsidered its denial of CAT relief.  Gonzales-Veliz first argues that the BIA abused its discretion in failing to reconsider the denial of CAT relief because the BIA provided no analysis.  However, as we held in Part II.B, substantial evidence supports the denial of CAT relief.  Gonzales-Veliz has not identified a change in law, a misapplication of the law, or an aspect of the case that the BIA overlooked in its CAT denial.  *See Zhao*, 404 F.3d at 301.  Therefore, the BIA did not abuse its discretion in concluding that Gonzales-Veliz failed to show that reconsideration was warranted on the CAT issue.

V.

We DENY Gonzales-Veliz's initial petition for review as the BIA's denial of asylum, withholding of removal, and CAT relief is supported by substantial evidence.  Because we hold that the BIA correctly interpreted *A-B-* and that *A-B-* is not arbitrary and capricious, we DENY Gonzales-Veliz's petition for review concerning the denial of her motion for reconsideration.