# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2023

Lyle W. Cayce
Clerk

No. 21-60722

Marcos A. Cruz Rodriguez,

*Petitioner*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A088 413 328

Before Barksdale, Southwick, and Higginson, *Circuit Judges*.

Per Curiam:[*]

Marcos A. Cruz Rodriguez petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying his motion for reconsideration of its dismissal of his appeal from an order of removal. His motion as well as his petition here improperly present an issue that he had

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

not earlier raised with the BIA in his appeal. We agree with the BIA's resolution of what was validly raised there and DENY the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Marcos A. Cruz Rodriguez is a native and citizen of Honduras. His mother was granted asylum in 2006, and he entered the United States in 2010 as a derivative beneficiary of that asylum. On August 12, 2011, he committed a Texas state robbery offense. Ten days later, his status was adjusted to that of a legal permanent resident. In 2012, Cruz Rodriguez pled guilty to two counts of robbery in state court. He was sentenced to eight years of deferred adjudication probation.

In 2012, the federal government charged Cruz Rodriguez as removable under 8 U.S.C. § 1227(a)(2)(A)(i), which applies to an alien who is convicted of a crime involving moral turpitude for which a sentence of one year or longer *may be* imposed. He sought withholding of removal and protection under the Convention Against Torture ("CAT"), but the immigration judge ("IJ"), in August 2013, denied his application and ordered him removed to Honduras.

In September 2013, Cruz Rodriguez filed a motion for an emergency stay of removal and a motion to reopen his case. He also sought readjustment of status with a waiver of inadmissibility based on an approved alien relative visa petition filed by his lawful permanent resident mother. In October 2013, the motion to reopen was granted. In March 2014, the IJ granted a discretionary waiver of inadmissibility under Section 1182(h) and adjusted his status back to that of a legal permanent resident on the basis of 8 U.S.C. § 1255(a).

Cruz Rodriguez later violated the terms of his deferred adjudication. In November 2015, a state court formally adjudicated him guilty and imposed a two-year term of imprisonment. The federal government again charged

him as removable, this time under Section 1227(a)(2)(A)(iii), as an alien who committed an aggravated felony, namely a crime of violence and a theft offense for which a term of imprisonment of at least one year had (belatedly) been imposed. *See* 8 U.S.C. § 1101(43)(F), (G). Cruz Rodriguez moved to terminate proceedings in part on the basis of *res judicata*, arguing that the Government could not again charge him with removability based on the same robbery offense. In March 2017, the IJ terminated the removal proceedings. In September 2017, however, the BIA vacated the IJ's decision and remanded the case, finding no *res judicata* effects from the prior rulings.

On remand, Cruz Rodriguez moved in October 2017 for termination of the proceedings, again arguing that he was not removable under Section 1227(a)(2)(A)(iii) because he had not been convicted of any crimes after his status readjustment in March 2014. In November 2018, the IJ ordered Cruz Rodriguez's removal. He made four arguments on appeal to the BIA, but he did not dispute that he was convicted after being admitted to this country. In June 2019, the BIA dismissed his appeal.

In his first petition for review in this court, Cruz Rodriguez presented these issues: (1) *res judicata* barred his second removability charge; (2) he was denied due process in the removal proceedings; and (3) he had not been convicted after admission. *Cruz Rodriguez v. Garland*, 993 F.3d 340, 342–43 (5th Cir. 2021). In April 2021, we denied his petition with respect to the argument that *res judicata* prevented the Government's second removability charge. *Id.* at 343–44. We reasoned that a different "nucleus of operative facts" underlay each removal proceeding because "[t]he Government could not have previously charged Cruz Rodriguez as an aggravated felon" under Section 1227(a)(2)(A)(iii) before he was sentenced in 2015, so the "availability of a new ground of removability was a central fact making *res judicata* inapplicable." *Id.* at 344. He could not have been removed as an aggravated felon until his deferred adjudication was terminated and he was

No. 21-60722

adjudicated guilty of robbery and sentenced to a term of two years' imprisonment. *Id.* at 343–44.

With regards to Cruz Rodriguez's argument that he was not removable as an aggravated felon because his conviction pre-dated his admission, we held that the claim had not been presented to the BIA, was thus unexhausted and beyond our jurisdiction to consider. *Id.* at 345–46. The same default and the same result applied to his argument about due process. *Id.* No renewed argument about the latter has been made for our review.

When we issued our opinion in 2021, Cruz Rodriguez's motion for reconsideration of the 2019 decision was pending at the BIA. In August 2021, the BIA denied reconsideration. Cruz Rodriguez timely petitioned this court for review. 8 U.S.C. § 1252(b)(1).

## DISCUSSION

A motion filed with the BIA to reconsider a decision "shall specify the errors of law or fact in the previous order and shall be supported by pertinent authority." 8 U.S.C. § 1229a(c)(6)(C). We review a BIA denial of a motion for reconsideration under a highly deferential abuse-of-discretion standard. *Gonzales-Veliz v. Barr*, 938 F.3d 219, 226 (5th Cir. 2019). "To succeed on a motion for reconsideration, the petitioner must identify a change in the law, a misapplication of the law, or an aspect of the case that the BIA overlooked." *Id.* (quotation marks and citation omitted). Legal conclusions are reviewed *de novo*. *Ramos-Torres v. Holder*, 637 F.3d 544, 547 (5th Cir. 2011).

A motion for reconsideration at the BIA is not an opportunity to raise previously available but overlooked issues. Instead, the limited purpose of a motion for reconsideration is to show error in the resolution of issues already presented to the BIA. *Omari v. Holder*, 562 F.3d 314, 319 (5th Cir. 2009). "[A] motion to reconsider based on a legal argument that could have been raised earlier in the proceedings will be denied." *Id.* (quoting *In re O–S–G–*,

No. 21-60722

24 I. & N. Dec. 56, 58 (BIA 2006)). An "issue raised for the first time in a motion for reconsideration that could have been raised earlier has not been properly presented to the BIA." *Id.*

Consequently, before analyzing Cruz Rodriguez's arguments about error in the denial of reconsideration, we must assure ourselves that his arguments either were made to the BIA in his original briefing or only became available after the initial BIA decision. Thus, we start with the issue he presents to this court, then work back through the earlier proceedings.

The only issue before us is whether "the BIA erred in determining that Petitioner was '[an] alien . . . convicted of an aggravated felony at any time after admission.'" He argues that his admission was in 2014 while his conviction was in 2012.[1]

We now examine Cruz Rodriguez's arguments in his motion for reconsideration. He made three different filings — an initial motion and two supplemental filings. Petitioner's original motion for reconsideration, filed in July 2019, alleged error in the BIA decision about *res judicata*, in denying relief under CAT, and in resolving his appeal through the decision of one member of the BIA instead of three. None of that is before us now.

In October 2019, Cruz Rodriguez filed additional authorities. Besides repeating arguments made in the original motion, he argued that he had not been convicted of any crime after his 2014 adjustment of status to that of a lawful permanent resident. Then, in his last supplemental filing in January 2020, he discussed at length an Attorney General decision that postdated the

---

[1] The Government insists his entry as an asylee in 2010 was an admission. Cruz Rodriguez disagrees. Possibly relevant events after 2010 are an adjustment of status in 2011, an order of removal in 2013, and a new adjustment of status in 2014.

No. 21-60722

BIA's earlier rulings. *See Matter of Thomas & Thompson*, 27 I. & N. Dec. 674 (A.G. 2019).[2]  He also repeated his earlier arguments.

With these as his arguments, we must decide, as a threshold matter, whether in seeking reconsideration Cruz Rodriguez was alleging error in the resolution of one or more issues he had raised with the BIA before its initial decision.  As we summarized earlier, this court in 2021 found he had not made an issue initially to the BIA of whether he had been convicted after his ostensible admission in 2014.  *Cruz Rodriguez*, 993 F.3d at 345.  Our opinion also stated that he had earlier presented but then abandoned the issue.  *Id.* What may have been the issue's earliest appearance was in a November 2016 motion to terminate the proceedings pending before an IJ.  The lead issue concerned *res judicata*, but he also argued that he had not been convicted after a 2014 admission.  The last time (before his motion for reconsideration at the BIA in October 2019) Cruz Rodriguez presented the issue he presses here was in his October 2017 motion before an IJ to terminate proceedings.  At the BIA, by not raising the issue he effectively conceded that his conviction occurred after admission.

The record is large, and perhaps we missed a presentation after 2017. Key, though, is there is no dispute that Cruz Rodriguez's appeal to the BIA did not present the issue of whether he had been convicted after an admission. Therefore, it was not a proper issue to include in a motion for reconsideration to the BIA unless for some reason that issue was previously unavailable to him.  *Omari*, 562 F.3d at 319.

We now examine how the BIA addressed his reconsideration issues.

---

[2] The Attorney General directed the BIA to refer the decisions the BIA had already made in those two cases to him for review. *See Matter of Thomas & Thompson*, 27 I. & N. Dec. 556 (A.G. 2019).  That directive was authorized by 8 C.F.R. § 1003.1(h)(1)(i).

No. 21-60722

The BIA analyzed Cruz Rodriguez's argument based on *Matter of Thomas & Thompson*. That Attorney General opinion was issued after the original BIA decision. The Attorney General discussed two immigrants who had been sentenced in different state courts to one year of imprisonment; over two decades later, each state court granted each alien's motion to reduce his sentence to a day or two less than one year. *Matter of Thomas and Thompson*, 27 I. & N. Dec. at 678–79. The question was whether being given new sentences of less than one year, though the original sentences had been fully served decades ago, meant their convictions could no longer be considered as being for aggravated felonies. *Id.* at 677–79. The Attorney General held that correction of an actual error in an initial sentence would cause the new sentence to be the operative one; conversely, if the alteration of a sentence is for rehabilitative or immigration reasons, the original sentence establishes the immigration consequences. *Id.* at 682–83.

We conclude that this Attorney General opinion has little relevance to the issue Cruz Rodriguez is making now. The Attorney General considered the different effects of modifications in sentences made, on the one hand, as a result of an initial error in sentencing, and on the other, for rehabilitative or immigration purposes. The possibility of a change in Cruz Rodriguez's sentence, though, was inherent in the conditions placed on the initial sentence. That possibility is unrelated to actual error being corrected or a reduction in a sentence to eliminate immigration consequences.

Certainly, Cruz Rodriguez insists the opinion matters. He argued to the BIA that the new opinion made clear that the date of his actual conviction remained in 2012; that the new sentence in 2015 did not result in any new conviction; that his relevant admission, therefore, was "to lawful permanent residency" in 2014. None of that explains how the Attorney General opinion created an issue about the relationship between his admission and his conviction that had not been available beforehand. No one had cited the BIA

7

opinions to us whose analysis was revised by the Attorney General's opinion. That is some indication the new opinion is irrelevant. We conclude that at most, the opinion removed any doubt that the 2015 sentence of imprisonment can be assigned immigration consequences. Quite differently, the Attorney General opinion does not affect the analysis of whether it matters that Cruz Rodriguez's 2012 conviction occurred prior to a 2014 adjustment of status but after his entry as an asylee and after his first adjustment of status.

The Attorney General opinion is the only potential, cited change in the legal landscape that could have — but it did not — make Cruz Rodriguez's issue before us newly available. Nonetheless, if the BIA resolved the previously abandoned issue being raised now, we need to consider the effect of its addressing the issue. The BIA first held that relying on an intervening change in the law such as the Attorney General's opinion did not meet the standard for reconsideration, which it said was to show an error in fact or law in the prior decision,[3] citing 8 C.F.R. § 1003.2(b)(1). The BIA then briefly discussed the arguments about *res judicata*, which the BIA found to be "substantially similar" to those it had already rejected. In discussing the Attorney General's opinion about revising sentences, the BIA stated that Cruz Rodriguez's "2012 conviction, for which he was sentenced to deferred adjudication, was never modified or clarified" by anything that occurred later. His post-conviction violation of the terms of his parole, though, made him removable. The BIA explained that the 2012 robbery conviction became an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F) & (G) as a "crime of violence" and a "theft offense" with a term of imprisonment of at least

---

[3] Our standard for a motion for reconsideration at the BIA is at least phrased differently: the petitioner must "identify a change in the law, a misapplication of the law, or an aspect of the case that the BIA overlooked." *Gonzales-Veliz*, 938 F.3d at 226 (quoting *Zhao v. Gonzales*, 404 F.3d 295, 301 (5th Cir. 2005)).

one year.  That holding does not revive the previously abandoned issue about the conviction being before admission.

Had the BIA gone no further, no further analysis would be needed here.  What created ambiguity was the BIA's summary:

> The final adjudication of guilt, upon which the aggravated felony charge was based, occurred after the respondent's March 14, 2014, re-adjustment of status as a lawful permanent resident.

Whatever the BIA meant by a "final adjudication of guilt," a term without clear relevance to "conviction" or "sentence," the quoted sentence is the only statement in the BIA's denial of reconsideration that potentially relates to the issue Cruz Rodriguez wrongly sought to raise in his motion for reconsideration, and now raises in this petition.  The fact that the BIA stated the "final adjudication" occurred after the 2014 adjustment of status could be seen as implying that his admission was in 2014 and the 2015 sentencing was the conviction.  The Government is concerned about that implication and urges us to reject that the BIA's reference to the "final adjudication of guilt" was a holding that his conviction was in 2015.  Instead, the Government argues, the BIA should be understood to mean, first, that 2012 remained the date of conviction — indeed, we already quoted the BIA's statement that the "2012 conviction, for which he was sentenced to deferred adjudication, was never modified or clarified."  Second, because Cruz Rodriguez was not sentenced in 2012 to at least a year of imprisonment, the new sentence in 2015 made him eligible for removal for being convicted of an aggravated felony.

While we are not sure what the BIA meant by stating the final adjudication of guilt occurred after 2014, we cannot conclude that this one sentence both *sua sponte* resuscitated the issue of whether Cruz Rodriguez was convicted after admission and resolved it in his favor.  The only newly

available authority was the Attorney General's opinion. The BIA quite reasonably stated, in the sentence in its opinion that followed the one we block-quoted above: "we do not find that the issuance of *Matter of Thomas and Thompson* affects the respondent's removability." We agree, as the Attorney General opinion did not change how convictions and admissions are identified.

The BIA was certainly within its discretion to conclude that Cruz Rodriguez did not "identify a change in the law, a misapplication of the law, or an aspect of the case that the BIA overlooked." *Gonzales-Veliz*, 938 F.3d at 226 (quoting *Zhao*, 404 F.3d at 301). The BIA does not "overlook" a nonjurisdictional issue that no one presented. The BIA did not err in denying the motion for reconsideration.

Before concluding, we mention a new opinion from this court that the Government's brief cited. The opinion was handed down after the BIA's denial of reconsideration and after the petitioner's opening brief had been filed. *See Diaz Esparza v. Garland*, 23 F.4th 563 (5th Cir. 2022). Cruz Rodriguez discussed it in his reply brief. In the opinion, we considered how to identify the relevant admission date when there have been multiple admissions. *Id.* at 571–75. As our opinion demonstrated, the legal principles are not new. We reviewed several opinions from this court and sought to harmonize what might seem to be their dissonant statements; we also relied on a decade-old BIA decision. *Id.* at 575 n.87 (citing *Matter of Alyazji*, 25 I. & N. Dec. 397, 406, 408 & n.9 (BIA 2011)).

We examine the BIA's 2011 *Alyazji* opinion first. It analyzed removal when the immigrant had been "*convicted* of a crime involving moral turpitude *committed* within five years . . . after the date of admission." § 1227(a)(2)(A)(i) (emphasis added). The BIA held that

to ascertain an alien's deportability under section 237(a)(2)(A)(i) of the Act, we look first to the date when his crime was committed. If, on that date, the alien was in the United States pursuant to an admission that occurred within the prior 5-year period, then he is deportable.

*Alyazji*, 25 I. & N. Dec. at 406. Our January 2022 *Diaz Esparza* opinion applied *Alyazji* in deciding the applicability of the other subsections of that statute, namely, the multiple-convictions and aggravated-felony provisions found in Section 1227(a)(2)(A)(ii) & (iii). *See Diaz Esparza*, 23 F.4th at 575.[4] Our holding was entirely consistent with the existing *Alyazji* authority.

Arguments based on the previously available issues discussed in the 2011 *Alyazji* decision were not raised by Cruz Rodriguez at the BIA nor did the BIA discuss them when denying reconsideration. Therefore, they are not properly before us.

Petition DENIED.

---

[4] We mention a difference between the moral turpitude subpart (i) relevant in *Alyazji* and subparts (ii) and (iii) relevant in *Diaz Esparza*. § 1227(a)(2)(A)(i)-(iii). The moral turpitude requirements are that the crime be *committed* within a certain time period after admission and that a conviction follows. For multiple crimes and for aggravated felonies, it is necessary that *conviction* occur after admission. The latter two subparts also do not limit the relevance of the convictions to a certain time period after admission.