IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2019

Lyle W. Cayce
Clerk

No. 18-60393

————————

ROSA ALBA MARTINEZ-LOPEZ; JOSAFAT NAHUM SIERRA-MARTINEZ,

Petitioners

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

Respondent

————————

Petition for Review of an Order of the
Board of Immigration Appeals

————————

Before JOLLY, SMITH, and COSTA, Circuit Judges.

PER CURIAM:

Rosa Alba Martinez-Lopez, on behalf of herself and her minor son Josafat Nahum Sierra-Martinez, seeks review of a Board of Immigration Appeals decision affirming the denial of their requests for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We deny the petition.

I.

Martinez-Lopez and her son are from Honduras. They entered the United States without documentation in October 2015. Each received a notice to appear before an immigration judge (IJ), but the notices stated that the date and time of the appearance were "To Be Determined." A later notice provided

No. 18-60393

a date and a time for a hearing in Houston. Martinez-Lopez and her son appeared at the prescribed time and place.

At a subsequent hearing before the IJ, Martinez-Lopez admitted through counsel that she and her son were inadmissible aliens. She applied for asylum, withholding of removal, and relief under the CAT.

In support of her application, Martinez-Lopez related the following instances of violence and harassment against her and her family in Honduras. Her brother was murdered after dropping off his son at school. The police did not investigate his murder, even though Martinez-Lopez's family filed a police report. A month later, several of Martinez-Lopez's relatives were killed too. This time, police arrested a gang member. Martinez-Lopez also noted that her father was killed over twenty years ago, and the police never investigated his murder.

Martinez-Lopez testified that the harassment of her family continued after her brother's murder. For example, men in a truck followed Martinez-Lopez, her mother, and her sisters. Even after Martinez-Lopez relocated to the United States, men followed her mother and sisters on at least one other occasion. They have not, however, encountered any problems in over a year. They now live in another part of Honduras.

Finally, Martinez-Lopez said that gang members harassed her at the cell phone store where she worked in Honduras. She testified that they came to the store five days a week and demanded that she and other employees hand over SIM cards. The gang members threatened to kill the store employees and their families if they did not cooperate. Again, the police took no action.

As a result of these events, Martinez-Lopez fears returning to Honduras because she believes the "people who killed [her] brother and the gang members who made [her] program the sim cards" would find and kill her.

2

No. 18-60393

The IJ denied Martinez-Lopez's application. Although she found Martinez-Lopez to be credible, the judge determined that Martinez-Lopez's testimony did not satisfy the requirements for asylum, withholding of removal, or protection under the CAT. The Board of Immigration Appeals affirmed the IJ's decision without opinion. Martinez-Lopez timely petitioned this court for review.

## II.

Because the Board affirmed the IJ's decision without opinion, the IJ's decision is the final agency determination subject to our review. *See Soadjede v. Ashcroft*, 324 F.3d 830, 832 (5th Cir. 2003) (per curiam). We review an IJ's factual determinations for substantial evidence, overturning a finding only when the evidence compels a contrary result. *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005).

## III.

As a threshold matter, Martinez-Lopez argues that, under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), the IJ lacked jurisdiction over her case. *Pereira* held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." *Id.* at 2113–14 (quoting 8 U.S.C. § 1229b(d)(1)(A)). Martinez-Lopez asserts that the notices sent to her and her son were similarly defective as they too failed to specify a date and time. Consequently, she says, there was no jurisdiction because 8 C.F.R. § 1003.14(a) vests jurisdiction in an immigration court only after the Department of Homeland Security files a proper charging document.

We recently rejected Martinez-Lopez's argument. *See Pierre-Paul v. Barr*, 930 F.3d 684, 689–90 (5th Cir. 2019). *Pierre-Paul* held that a notice to appear lacking a date and time is not defective for the purposes of establishing jurisdiction and that, even if it was, an immigration court could cure that defect

3

No. 18-60393

by sending a subsequent hearing notice with the date and time. *Id.* at 689–91. *Pereira*, we explained, hinges on the stop-time rule's statutory reference to 8 U.S.C. § 1229(a), which requires a notice to appear to include the time and place of the hearing. *Id.* at 689; *see also* 8 U.S.C. § 1229b(d)(1)(A). But 8 C.F.R. § 1003.14 does not mention section 1229(a). And for the purposes of a regulation or statute that is not "textually bonded to 8 U.S.C. § 1229(a)," a notice to appear does not need to include a date and time to be valid; it need only satisfy applicable regulations. *See Pierre-Paul*, 930 F.3d at 690.

The notices Martinez-Lopez and her son received satisfied the relevant regulations. *See* 8 C.F.R. §§ 1003.15, 1003.26; *see also Santos-Santos v. Barr*, 917 F.3d 486, 490 (6th Cir. 2019) (listing regulatory requirements for notices to appear). Although they did not specify a date and time for the appearance, the regulations require that information only "where practicable." 8 C.F.R. § 1003.18(b). Moreover, any defect was cured by the notices Martinez-Lopez and her son received just over a month later.[1] As a result, the notices vested the IJ with jurisdiction.

## IV.

## A.

Because the immigration court had jurisdiction, we turn to the merits of Martinez-Lopez's petition. An applicant for asylum must demonstrate that she

---

[1] Martinez-Lopez briefly argues that she and her son may be eligible for voluntary removal under 8 U.S.C. § 1229c(b)(1). A requirement for voluntary removal is that "the alien has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served under section 1229(a) of this title." 8 U.S.C. § 1229c(b)(1)(A). Martinez-Lopez contends that, because she and her son never received a valid notice to appear, they have satisfied this requirement by living in the United States for over a year. She requests remand to the IJ to consider whether she and her son fulfill section 1229c(b)(1)'s other requirements. *Pierre-Paul* forecloses her argument. The immigration court cured any defect in the original notices when it sent the notices of hearing in December 2015, less than two months after Martinez-Lopez and her son entered the United States. *See Pierre-Paul*, 930 F.3d at 690–91.

is a "refugee" under the Immigration and Nationality Act.   8 U.S.C. § 1158(b)(1)(B)(i).  A refugee is a person outside her country of nationality who "is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."    *Id.* § 1101(a)(42)(A).   Persecution is extreme; it is more than discrimination, harassment, or threats unaccompanied by physical harm.  *Eduard v. Ashcroft*, 379 F.3d 182, 187 n.4, 188 (5th Cir. 2004).  It also must be motivated, at least in part, by one of the five protected grounds enumerated in the statute.  *Girma v. INS*, 283 F.3d 664, 667 (5th Cir. 2002) (per curiam).

A petitioner requesting withholding of removal must make a similar showing but shoulders a greater burden: she must demonstrate a "clear probability" of persecution on account of one of the five protected grounds if she returns to her home country.  *Revencu v. Sessions*, 895 F.3d 396, 402 (5th Cir. 2018).  The "clear probability" standard requires more certainty than "a well-founded fear"; it means that persecution upon return is "more likely than not." *Id.*

The IJ denied Martinez-Lopez's requests for asylum and withholding of removal.    She first determined that Martinez-Lopez's "unfortunate" experiences did not amount to persecution.  She next found that Martinez-Lopez had not demonstrated that any future persecution against her would be motivated by a protected ground.

The evidence does not compel a contrary result.  Although Martinez-Lopez credibly testified about a tragic course of events, there was substantial evidence to conclude that the hardships she experienced—namely, threats and men following her—did not constitute past persecution.  We have held that "mere denigration, harassment, and threats" are ordinarily not extreme enough to be considered persecution.  *Eduard*, 379 F.3d at 188; *see also*

*Tesfamichael v. Gonzales*, 469 F.3d 109, 116 (5th Cir. 2006).  Indeed, we have affirmed IJ determinations that even more severe mistreatment than what Martinez-Lopez experienced fell short of persecution.  *See, e.g.*, *Mikhael v. INS*, 115 F.3d 299, 304 (5th Cir. 1997) (approving IJ finding of no persecution when an applicant and his family suffered kidnapping, detention, torture, bombing, theft, and other violence); *see also id.* n.4 (collecting cases approving IJ findings of no persecution despite even more extreme mistreatment).

Recognizing this precedential hurdle, Martinez-Lopez also points to the deaths of her family members and the economic injury she suffered because she was forced to leave her employment.  But although these kinds of harms can constitute persecution, the persecutor must inflict them intending to target the asylum applicant.  *See Kane v. Holder*, 581 F.3d 231, 239 (5th Cir. 2009) (approving Board ruling that the female genital mutilation of an asylum applicant's daughters could not constitute persecution of the applicant unless done with the purpose of emotionally harming the applicant himself); *Ahmed v. Gonzales*, 467 F.3d 669, 674 (7th Cir. 2006) (approving finding that an asylum applicant's economic hardships did not constitute persecution, in part, because no evidence indicated that his difficulties were "the result of deliberate punishment").  Martinez-Lopez did not testify that her relatives' murders were aimed at injuring her, nor did she assert that the gang members who threatened her at work did so to cause her economic harm.  As a result, these events do not show past persecution.

The record also does not compel a finding that Martinez-Lopez demonstrated a well-founded fear—much less a clear probability—that her repatriation would result in persecution based on a protected ground.  Because she did not establish past persecution, she cannot invoke a presumption of future persecution under 8 C.F.R. § 1208.16(b)(1)(i).  Instead, she must "have a subjective fear of persecution, and that fear must be objectively reasonable."

No. 18-60393

*Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 445 (5th Cir. 2001) (per curiam).  She contends that she will be persecuted because of her membership in a particular social group[2] (her brother's family) and her political belief in the rule of law (as opposed to the rule of gangs).

Assuming the validity of these protected grounds, substantial evidence supports the IJ's finding that Martinez-Lopez failed to show a connection between them and any persecution she has faced or will face.  Martinez-Lopez admitted that she did not know why her brother, relatives, or father were killed.  *See Mariscal-Romo v. Sessions*, 729 F. App'x 310, 313 (5th Cir. 2018) (per curiam) (finding that an asylum applicant's inability to explain the motive behind her relatives' murders supported the Board's determination that she was not persecuted on account of her family membership).  She also did not say whether the men who followed her and her family were the same people who killed her brother, nor did she offer a reason as to why the men followed them.  No one ever threatened her or her family because they filed police reports, and no one spoke directly to her about her brother's murder.

In addition, Martinez-Lopez did not tie her interactions with gang members to her brother or her opinions on the rule of law.  She admitted that she did not know if the threats she received at the cell phone store were related to her brother's death.  To the contrary, she said that the gang members threatened her and her fellow employees to steal new SIM cards.  Gang members have continued to go to the store to get SIM cards since Martinez-Lopez left for the United States.  *See Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009) (approving an IJ's determination that an applicant for withholding

---

[2] For the first time on appeal, Martinez-Lopez argues that the definition of a "particular social group" is unconstitutionally vague.  Because she did not present this argument to the Board, we lack jurisdiction to review it.  *See Omari v. Holder*, 562 F.3d 314, 318–19 (5th Cir. 2009).

of removal failed to show persecution on account of his religion because the persecutor "demanded money from *all* business people in his neighborhood"). Martinez-Lopez's testimony thus does not support, let alone require, a finding that she and her family were "the special targets of brutality." *Majd v. Gonzales*, 446 F.3d 590, 596 (5th Cir. 2006).

The evidence does not compel a finding in Martinez-Lopez's favor on either her asylum or withholding of removal requests.

### B.

A petitioner seeking protection under the CAT must show that it is more likely than not that she will be tortured if she returns to her country of origin. *Chen v. Gonzales*, 470 F.3d 1131, 1141 (5th Cir. 2006). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official . . . ." 8 C.F.R. § 208.18(a)(1). To show acquiescence by a public official, a petitioner must demonstrate that the government is willfully blind to the torture. *Chen*, 470 F.3d at 1141. Said differently, an official must be aware of the torture and take no action to protect the victim. *Id.* at 1142.

As with Martinez-Lopez's other claims, there is substantial evidence to support the IJ's denial of protection under the CAT. First, Martinez-Lopez has not shown that it is more likely than not that she will be tortured if she returns to Honduras. She never alleged that she or her son were the victims of torture when they lived in Honduras. *See* 8 C.F.R. § 208.16(c)(3)(i) (listing "[e]vidence of past torture inflicted upon the applicant" as a factor in assessing a CAT claim). And she admitted that her mother and sisters had relocated to another part of Honduras, where they had remained undisturbed for over a year. *See id.* § 208.16(c)(3)(ii) (listing "[e]vidence that the applicant could relocate to a

8

part of the country of removal where he or she is not likely to be tortured" as a factor in assessing a CAT claim).

Moreover, Martinez-Lopez has not pointed to evidence establishing that Honduran authorities would acquiesce to the torture of her and her son. Although the police did not investigate many of the crimes affecting Martinez-Lopez's family, they did arrest a gang member in connection with her relatives' murders.     And although the record contains reports of some Honduran authorities working with gangs, those same reports indicate that the Honduran government is working to combat both corruption and gang violence. *See Chen*, 470 F.3d at 1142.   In sum, the general allegations Martinez-Lopez makes regarding the unwillingness of Honduran police to investigate gang violence "may weigh against [the IJ's] conclusion, [but] they do not *compel* the opposite conclusion." *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 494 (5th Cir. 2015).

## V.

For the foregoing reasons, we DENY the petition for review.