# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60414

DORA LIZETH TROCHEZ CASTELLANOS,

Petitioner

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

Respondent

United States Court of Appeals
Fifth Circuit

**FILED**
June 4, 2020

Lyle W. Cayce
Clerk

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A206 721 272

Before JOLLY, GRAVES, and DUNCAN, Circuit Judges.

PER CURIAM:*

Petitioner, Dora Lizeth Trochez Castellanos ("Trochez-Castellanos"), seeks review of the Board of Immigration Appeals' ("BIA") order dismissing her appeal from the immigration judge's ("IJ") denial of her applications for asylum and withholding of removal. Trochez-Castellanos contends that the BIA erred when it adopted the IJ's conclusion that she failed to establish past persecution or a well-founded fear of future persecution on account of her membership in

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the particular social group, "family members of ex-MS gang members in Honduras." For the reasons below, we DENY Trochez-Castellanos's petition.

## I. Factual Background

Trochez-Castellanos, a native and citizen of Honduras, and her minor daughter[1] entered the United States in April 2014 without having been admitted or inspected. An asylum officer determined that Trochez-Castellanos had demonstrated a credible fear of persecution or torture. After being charged with removability and given a Notice to Appear, Trochez-Castellanos filed applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

At an IJ's hearing, Trochez-Castellanos testified that she came to the United States because she was afraid of the Mara Salvatrucha ("MS") gang in Honduras. In 2010, she met and began living with her daughter's father, Henry Ulloa. Trochez-Castellanos spent three years with her ex-partner, Ulloa, during which she noticed that he would leave for two to three days at a time and associate with MS gang members. In October 2013, Ulloa told Trochez-Castellanos that he was experiencing problems with the MS gang and that its gang members were going to kill him. Ulloa quit the MS gang and left Trochez-Castellanos without disclosing where he was going. Trochez-Castellanos has not heard from Ulloa since he left.

Between October and December 2013, MS gang members approached Trochez-Castellanos on six occasions as she returned from work in the evenings to ask her about Ulloa's whereabouts. Sometime in December 2013, two teenage MS gang members came to Trochez-Castellanos's home and told her that since Ulloa betrayed the gang and could not be found, Trochez-Castellanos had to join the MS gang or otherwise she and her daughter would

---

[1] The claims of Trochez-Castellanos's daughter are not subject to this appeal.

be killed. Although Trochez-Castellanos could not see weapons on the two gang members, she believed that they were carrying guns covered behind their pants and belts. Trochez-Castellanos feared that the gang members would fulfill their death threat, but she did not contact the police after being threatened because she believed the police "work together with the gang members."[2] She testified that she never encountered these two gang members again.

The day after the gang members' threat, Trochez-Castellanos moved an hour away to a different town in Honduras to stay with a friend. Trochez-Castellanos testified that she did not experience problems with gang members mainly due to the fact that she was too afraid to leave her friend's house for two months. Trochez-Castellanos also testified that various gang members asked her old neighbors about her whereabouts, but her neighbors did not disclose that information. After questioned by the MS gang about her daughter, Trochez-Castellanos's mother[3] also moved two and a half hours away and had no further encounters with gang members. Because staying indoors was not a viable, long-term solution to deal with gang threats, Trochez-Castellanos made the decision in February 2014 to leave Honduras with her then three-year old daughter.

## II. Procedural Background

After hearing the evidence, the IJ found Trochez-Castellanos's testimony credible but denied her applications for asylum, withholding of removal, and

---

[2] When asked by the IJ why she did not contact the police, Trochez-Castellanos explained that she knew of a woman who reported gang members to the police and filed a report. The police "leaked" the woman's report to gang members who then went to the woman's house and threatened to kill her. The woman subsequently left her home.

[3] On her applications for asylum and withholding of removal, Trochez-Castellanos listed that her father is currently located in Honduras.

protection under the CAT. With respect to asylum, the IJ concluded that she had not demonstrated past persecution and, even if she had, that her claimed particular social group ("PSG")—"family members of ex-MS gang members in Honduras"—was not cognizable or socially distinct and that she could not demonstrate a familial relationship as she was never married to her ex-partner Ulloa, who had been absent from her and her daughter's lives since 2013. The IJ also determined that Trochez-Castellanos had not demonstrated a well-founded fear of future persecution, given the finding that her claimed social group was not cognizable and the fact that she could relocate to another area of Honduras to avoid harm. The IJ also found that Trochez-Castellanos necessarily failed to demonstrate her eligibility for withholding of removal, which has more stringent standards than asylum. Finally, with respect to protection under the CAT, the IJ determined that Trochez-Castellanos failed to establish past torture or that the gang members acted at the instigation or with the acquiescence of the Honduran government. The IJ denied Trochez-Castellanos's petitions and ordered her removed to Honduras.

The BIA affirmed the IJ's asylum determinations that the threats Trochez-Castellanos experienced did not rise to the level of past persecution, that she did not have a well-founded fear of future persecution based on her membership in a cognizable social group, and that she failed to demonstrate that she could not relocate to another area of Honduras to avoid harm. The BIA further stated that a fear of forcible gang recruitment was not a basis for asylum. The BIA concluded that Trochez-Castellanos was therefore ineligible for asylum and withholding of removal. The BIA noted that Trochez-Castellanos did not appeal the IJ's denial of her application for protection under the CAT. Having found her ineligible for asylum and withholding of removal, the BIA dismissed Trochez-Castellanos's appeal.

4

No. 19-60414

## III. Jurisdiction

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a)(1). Trochez-Castellanos timely petitioned for review because she filed her petition on June 12, 2019, within thirty days of the BIA's decision. 8 U.S.C. § 1252(b)(1). Venue is proper because the immigration proceedings took place in New Orleans, Louisiana.  *See* 8 U.S.C. § 1252(b)(2).

## IV. Standard of Review

We review the decision of the BIA and will consider the IJ's decision only to the extent it influenced the BIA. *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009). We review questions of law de novo and factual findings for substantial evidence. *Id*. Under the substantial evidence standard, "[t]he alien must show that the evidence was so compelling that no reasonable factfinder could conclude against it." *Wang v. Holder*, 569 F.3d 531, 537 (5th Cir. 2009).

## V. Discussion

Trochez-Castellanos contends that she is entitled to asylum and withholding of removal because she has demonstrated past persecution and a well-founded fear of future persecution on account of her membership in a PSG. Trochez-Castellanos argues that the BIA erred by (1) failing to view the aggregate effect of multiple threats as constituting persecution and (2) narrowly construing the term "family" in her claimed PSG of "family members of ex-MS gang members in Honduras."

To qualify for asylum as a refugee, an applicant must demonstrate either past persecution or a reasonable, well-founded fear of future persecution on account of one of the five grounds enumerated in 8 U.S.C. § 1101(a)(42)(A), including "membership in a particular social group." *Milat v. Holder,* 755 F.3d 354, 360 (5th Cir. 2014); *see* 8 U.S.C. § 1158(b)(1)(B)(i). Persecution is "[t]he infliction of suffering or harm" that "need not be physical, but may take other forms[.]" *Eduard v. Ashcroft,* 379 F.3d 182, 187 (5th Cir. 2004) (citation

5

omitted). "[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive," *Arif v. Mukasey,* 509 F.3d 677, 680 (5th Cir. 2007) (citation omitted), and cannot be based on "mere denigration, harassment, and threats." *Eduard,* 379 F.3d at 188. "Examples of persecution include, but are not limited to, 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" *Morales v. Sessions,* 860 F.3d 812, 816 (5th Cir. 2017) (quoting *Fei Mei Cheng v. Attorney Gen. of U.S.*, 623 F.3d 175, 192 (3d Cir. 2010)). "An applicant *may establish* past persecution on the basis of the cumulative effects of multiple incidents even if each incident, considered in isolation, would not rise to the level of persecution." *Lin v. Holder*, 478 F. App'x 219, 227 (5th Cir. 2012) (unpublished) (emphasis added) (citing *Bing Shun Li v. Holder,* 400 Fed. Appx. 854, 856, 858–59 (5th Cir. 2010) (finding no persecution where applicant who challenged wife's forced abortion was fired from his job, detained for two days, subjected to coercive interrogation, and experienced some physical abuse not requiring medical attention).

Contrary to Trochez-Castellanos's assertion, the IJ and BIA considered the totality of the gang incidents, including the six occasions gang members inquired about Ulloa's whereabouts and the death threat made at Trochez-Castellanos's house. Moreover, substantial evidence supports the BIA's and IJ's conclusion that Trochez-Castellanos has not demonstrated past persecution. The inquiries about her ex-partner Ulloa, who was also threatened with death, were troubling but there is no indication in the record that Ulloa was physically harmed or killed by the MS gang.[4] The gang

---

[4] Even if there was indication that Ulloa was killed or harmed, Trochez-Castellanos must still demonstrate that the persecutors inflicted such harm intending to target her. *See Martinez-Lopez v. Barr*, 943 F.3d 766, 771 (5th Cir. 2019) (finding no past persecution where petitioner did not testify that her relatives' murders were aimed at injuring petitioner); *Huezo v. Mukasey,* 269 F. App'x 374, 375 (5th Cir. 2008) (unpublished) (finding no past persecution

members' death threat to Trochez-Castellanos was alarming but it was unaccompanied by violence. Our court has consistently affirmed determinations that death threats, without more, are not persecution. *See, e.g., Pirmuhammad v. Ashcroft*, 122 F. App'x 132, 132 (5th Cir. 2005) (unpublished) (holding that several death threats, without physical abuse, detainment, or interrogation, are not persecution); *Chamorro v. Ashcroft,* 119 F. App'x 608, 608 (5th Cir. 2004) (unpublished) (same); *Zapeta v. Ashcroft,* 103 F. App'x 857, 857 (5th Cir. 2004) (unpublished) (same); *Torres v. Ashcroft,* 88 F. App'x 706, 706 (5th Cir. 2004) (unpublished) (same); *accord Reyes-Guerrero v. I.N.S.,* 192 F.3d 1241, 1243 (9th Cir. 1999) (finding past persecution where repeated and menacing death threats were accompanied by confrontation and made over a period of two years). Accordingly, Trochez-Castellanos cannot establish past persecution under these threats standing alone without significant actual suffering or harm.

We may also treat unfulfilled death threats as a question of future—not past—persecution. *See Bernal-Garcia v. INS,* 852 F.2d 144, 146–47 (5th Cir. 1988). "To establish a well-founded fear of future persecution, an alien must demonstrate a subjective fear of persecution, and that fear must be objectively reasonable." *Zhao v. Gonzales*, 404 F.3d 295, 307 (5th Cir. 2005) (internal quotation marks and citation omitted). "[A] finding of a well-founded fear of persecution is negated if the applicant can avoid persecution by relocating to another part of his home country," unless the persecution is by a government or is government-sponsored. *Eduard,* 379 F.3d at 189 (citing 8 C.F.R. § 208.13(b)(2)(ii)). Critically, Trochez-Castellanos makes no argument at all as to the BIA and IJ's determination that she could relocate to another part of

where petitioner received multiple death threats but did not present evidence that he or members of immediate family suffered any physical harm).

No. 19-60414

Honduras. The IJ and BIA found that not only was Trochez-Castellanos able to relocate an hour away from her home without gang confrontations, but also her mother was able to relocate two hours away without further gang encounters. We have also rejected the contention that a petitioner is unable to "reasonably relocate to another part of [the applicant's country of nationality]" due to a belief that gang members are "everywhere." *Munoz-Granados v. Barr*, 958 F.3d 402, 407-08 (5th Cir. 2020) (holding that "a fear of general violence and civil disorder is not sufficient to support a fear of future persecution"). Accordingly, substantial evidence also supports the BIA and IJ's conclusions that Trochez-Castellanos has not demonstrated a reasonable, well-founded fear of future persecution.

Because substantial evidence supports the BIA and IJ's conclusions that Trochez-Castellanos has not established past persecution or a well-founded fear of future persecution, we need not consider her second contention challenging whether any persecution was on account of membership in her claimed PSG of "family members of ex-MS gang members in Honduras."

Finally, we turn to Trochez-Castellanos's eligibility for withholding of removal which requires a demonstration of "a clear probability of persecution upon return." *Roy v. Ashcroft*, 389 F.3d 132, 138 (5th Cir. 2004) (internal quotation marks and citation omitted). As "[w]ithholding of removal is a higher standard than asylum," one who fails to show entitlement to asylum fails to show entitlement to withholding of removal. *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002). Because substantial evidence supports the BIA's finding that Trochez-Castellanos failed to meet her burden for asylum, she has also failed to carry her burden for withholding of removal. *See Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012).

## VI. Conclusion

For these reasons, we DENY Trochez-Castellanos's petition for review.