# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 14, 2022

Lyle W. Cayce
Clerk

No. 20-60890

Julio Cesar Esquibel-Segovia; Conzuelo Mejia-Guillen; Daniela Sarahi Esquibel-Mejia; Yolani Jazmin Esquibel-Mejia,

*Petitioners*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

---

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A208 982 686
BIA No. A208 449 553
BIA No. A208 449 554
BIA No. A208 982 685

---

Before Jones, Southwick, and Oldham, *Circuit Judges*.

Per Curiam:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60890

Julio Cesar Esquibel-Segovia, his common-law wife Conzuelo Mejia-Guillen, and their two daughters, Daniela Sarahi Esquibel-Mejia and Yolani Jazmin Esquibel-Mejia, natives and citizens of Honduras, entered the United States without inspection.   They petition for review of the Board of Immigration Appeals's decision affirming the Immigration Judge's denial of their claims for asylum, withholding of removal, and protection under the Convention Against Torture.  We DENY the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Conzuelo Mejia-Guillen had a nephew, who was a part of a local gang in Honduras and stole cattle from another man by the name of German Pacheco.  Pacheco found out that Freddy was responsible for the theft and sought to exact revenge by killing Freddy's father.  Freddy, though, was able to convince Pacheco that his father was actually named Juteno Medina, who was Petitioner Julio Cesar Esquibel-Segovia's father-in-law. Mr. Medina was then killed by the police on the orders of Mr. Pacheco.

Esquibel-Segovia and his family investigated Medina's death and received information suggesting that police officers had been involved in the crime.  As they continued to investigate, the family began receiving written threats. The letters threatened to kill the Petitioners if they did not disclose Freddy's location.  After receiving four letters, the Petitioners moved to a town several hours away, but continued to receive threatening letters at their new home.

In September 2015, Mejia-Guillen and Daniela entered the United States without inspection.  In October 2015, they were served with notices to appear and charged as inadmissible for want of valid entry documents pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).  Esquibel-Segovia and Yolani entered the United States without being admitted or inspected in April 2016

and shortly thereafter were served with notices to appear for entering the United States without inspection under Section 1182(a)(6)(A)(i).

The Petitioners filed applications with the immigration court for asylum, withholding of removal, and Convention Against Torture protection. In 2018, the Immigration Judge ("IJ") issued an oral decision that found the Petitioners' testimony credible but denied all relief. The IJ first rejected the Petitioners' proposed grounds for asylum as non-cognizable. The IJ separately found as a factual matter that even if the grounds were cognizable, the Petitioners had failed to show a nexus between the proposed grounds for asylum and the harm the family suffered. Going further, the IJ found that the Petitioners had suffered no past persecution because, other than the threats, "nothing happened to any of them," and non-imminent threats alone generally do not constitute harassment rising to the level of persecution. The IJ also found no objectively valid fear of future persecution as other relatives continued to live in Honduras. Because the Petitioners failed to satisfy the standard for asylum, the IJ did not consider relief under the stricter standard for withholding of removal. Finally, the IJ found that the Petitioners failed to demonstrate a probability of torture should they be returned to Honduras because the family had remained in Honduras for years after Medina's death without being tortured.

The BIA affirmed the IJ's conclusions that the family's proposed grounds for asylum were either non-cognizable or invalid in the present case; that the Petitioners did not demonstrate a nexus between any harm and the proposed grounds for asylum; that because the Petitioners were ineligible for asylum, they necessarily could not meet the heightened burden required to demonstrate eligibility for withholding of removal; and that denial of relief under the Convention Against Torture ("CAT") was appropriate because the family was not more likely than not to be tortured upon removal to

No. 20-60890

Honduras.  The Petitioners then filed a timely petition for review of the BIA's decision.

## DISCUSSION

On petition for review of a BIA decision, this court reviews factual findings for substantial evidence and questions of law *de novo*. *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001).  The substantial-evidence standard requires that the BIA's conclusion be based on the evidence presented and that its decision be substantially reasonable.  *See Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005).  Under this standard, this court will not overturn a factual finding unless "the evidence compels a contrary result."  *Martinez-Lopez v. Barr*, 943 F.3d 766, 769 (5th Cir. 2019).  This court reviews the BIA's decision and considers the IJ's decision only to the extent it influenced the BIA.  *See Singh v. Sessions*, 880 F.3d 220, 224 (5th Cir. 2018).

### I.     Asylum

To qualify for asylum or withholding of removal, an alien must demonstrate: (1) "either past persecution or a reasonable, well-founded fear of future persecution," (2) "on account of" (3) "one of the five" grounds enumerated in 8 U.S.C. § 1101(a)(42)(A).  *Milat v. Holder*, 755 F.3d 354, 360 (5th Cir. 2014); *see also* 8 U.S.C. § 1158(b)(1)(i).  One of the five enumerated grounds is membership within in a particular social group ("PSG"). *Gonzales-Veliz v. Barr*, 938 F.3d 219, 228–29 (5th Cir. 2019).  We have previously held that "a particular social group must: (1) consist of persons who share a common immutable characteristic; (2) be defined with particularity; and (3) be socially visible or distinct within the society in question."  *Id.*

The family alleged membership in three proposed PSGs: "witnesses to the murder of Justino Medina," "immediate family members of Justino

No. 20-60890

Medina" and "nuclear family members of Esquibel-Segovia." We consider each proposed PSG in turn.

The BIA first adopted the IJ's finding that none of the family members qualify as members of the PSG, "witnesses to the murder of Justino Medina," as none of the family members witnessed his murder. Even if they had, though, the BIA stated that the witnessing of criminal activity did not constitute a cognizable PSG under its precedent. In a similar case, this court considered whether "former informants" on a criminal syndicate constituted a cognizable PSG. *See Hernandez-De La Cruz v. Lynch*, 819 F.3d 784, 786–87 (5th Cir. 2016). We held that it did not because the proposed group neither had "social distinction" nor "would be perceived as a particular group, because . . . members of [the proposed PSG were] not substantially different from anyone else in the general population who resisted," or threatened the interests of the syndicate. *Id.* We see nothing in the BIA's decision or underlying record suggesting that the proposed PSG of "witnesses to the murder of Justino Medina" possesses the requisite social distinction to support a viable asylum claim.

The BIA also rejected the "family-based particular social groups" as "not cognizable" under a now-vacated decision from the attorney general. The BIA then determined that the Petitioners had not established the requisite nexus between the past harm and a protected ground.

Even assuming that family-based PSG asylum claims could be cognizable, the Petitioners here must demonstrate "that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion" on the BIA's factual finding that there was no nexus between the past harm and a protected ground. *See Revencu v. Sessions*, 895 F.3d 396, 401 (5th Cir. 2018) (quotation marks and citation omitted). The Petitioners simply cannot meet this heavy burden. The record establishes that threats of harm followed

those individuals who investigated Justino Medina's murder and that other members of the family have lived without incident in Honduras.

## II.    *Withholding of removal*

The Petitioners also assert that the BIA erred in summarily rejecting their applications for withholding of removal.  The BIA's withholding of removal analysis rested on its asylum analysis:  "As the [family] did not meet their burden in proving eligibility for asylum, they necessarily did not meet the higher burden required for withholding of removal."  The Petitioners now rely on out-of-circuit precedent to assert that the burden for showing a nexus between the persecution and their persecution is more relaxed in the withholding context than in the asylum context. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 359 (9th Cir. 2017).  This is not true in our circuit. *Compare Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 383 (5th Cir. 2016) (asylum context), *with Revencu*, 895 F.3d at 402 (withholding of removal context).  Accordingly, we affirm the BIA's rejection of the Petitioners' withholding of removal claims.

## III.    *Convention Against Torture*

To establish entitlement to relief under the CAT, an alien must prove "that it is more likely than not that he will be tortured with the consent or acquiescence of public officials if he returns to the particular country in question.  8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1).  The BIA found no clear error in the IJ's finding that the Petitioners did not meet their burden in proving that it was more likely than not that they would suffer torture if returned to Honduras.  In support of its determination, the BIA pointed out the length of time spent by the family in Honduras after receipt of the threatening letters without suffering physical harm and the fact that Mejia-Guillen's mother continues to live safely in Honduras.

No. 20-60890

The Petitioners acknowledge that Esquibel-Segovia and Mejia-Guillen's mothers and siblings continue to live safely in Honduras, and that the threats to the family ceased in 2014 — a year before Mejia-Guillen and one daughter left, and two years before Esquibel-Segovia and the other daughter departed the country. Esquibel-Segovia argues that he fled Honduras at the later date because he learned that certain policemen involved in the murder of his father-in-law were relocating to his town. He cites no evidence of new threats by them before or after he fled. He also offers that one of Mejia-Guillen's cousins was killed after the family left Honduras as evidence of a continuing threat to the family. Esquibel-Segovia admitted at the hearing, though, that he did not know the motivation for the killing.

Last, the Petitioners contend that the BIA ignored their testimony that the police were involved in the murder of Mejia-Guillen's father and the threats. This evidence does act as counterweight to the evidence that other family members continued to live peacefully in Honduras and that no member of the family was threatened in the year or two prior to leaving Honduras, but it does not compel the conclusion that the Petitioners more likely than not would be tortured if returned to Honduras, much less that this would occur with the consent or acquiescence of Honduran authorities, as required under our precedent. *See Martinez-Lopez*, 943 F.3d at 769. Accordingly, substantial evidence supports the BIA's determination that Esquibel-Segovia, Mejia-Guillen, and their two daughters are not entitled to protection under the CAT.

The petition is DENIED.